386

H. G. CUNNINGHAM, Plaintiff-Appellee, *v.* ROGER C. AESCHLIMAN, Defendant-Appellant.

(No. 70-198;

Second District—September 8, 1971.

Guild, J., dissenting.

Allen S. Greene, of Wheaton, for appellant.

Rathje Woodward, Dyer & Burt, of Wheaton, and Gerald J. Brooks, of Chicago, for appellee.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

In this action, plaintiff, a real estate broker in Indiana, sued the defendant, owner of a home in Munster, Indiana, for a real-estate commission on the sale of the home and certain refurbishing expenses to the home. A circuit court judge in DuPage County in a bench trial found in favor of the plaintiff broker and against the defendant seller, who had moved from Munster to Wheaton, Illinois. Judgment was entered in the amount of $4,080 for commission, and $379 for refurbishing expenses.

The main issue is whether the plaintiff broker procured or produced a ready, willing and able purchaser within the time and according to the terms of the sales agency agreement.

On June 14, 1967, the defendant executed an instrument designated as a home listing agreement, which was an exclusive agreement, and was directed to the plaintiff, a licensed real estate broker. This agreement, by its terms, was to continue in force for a period of 90 days, which made its expiration date September 12, 1967. The listing agreement contained the following:

"if within six months after the expiration of said period, a sale is made to any person, *directly or indirectly*, whom you or any other member of the Multiple Listing Service of the Calumet Area, Inc. *may have interested in the property*, I or we agree to pay you a commission of 6% of the gross sales or exchange price thereof, provided, however, that this extension clause shall not be applicable and binding during the term said real estate is relisted with some other licensed realtor under an exclusive listing contract upon or after the term of this listing agreement." Emphasis added.

It is undisputed that the home in question was ultimately purchased by a Dr. Santare and his wife, who were introduced to the seller by the broker. Without detailing all the offers and counter-offers made between Santare and the seller, it appears that the property was listed in the agreement for a sales price of $75,000, or for a lesser sum and on other terms with the consent of the seller. There were three offers to purchase, by Santare, and submitted through the broker to the seller. None of these offers was accepted, and each prompted a counter-offer which was not accepted. However, on August 29, 1967, the broker returned the $500 earnest money to Santare, and after that Santare had no further dealings with the broker. Thereafter, Santare called the seller and arranged a meeting for Labor Day weekend. They met on Labor Day, at which time the seller suggested a lease, and certain corrections to the condition of the property were suggested, to be made at the lessor's expense, to put the house in good condition. Thereafter, a lease was executed between Santare and his wife, as lessees, and Mr. and Mrs. Aeschliman, as lessors. Execution of the lease was acknowledged before a notary public by the lessees on September 5, 1967, which date is prior to the expiration of the exclusive listing agreement. Attached to the lease is a rider which is labeled, "Additional Covenants Between Aeschliman and Santare," and covered certain conditions of the property to be corrected by the lessors. It is dated September 14, 1967, and is signed by the parties. Also attached to the lease is an option to purchase, which formed a part of the lease and was signed by both parties, and its execution by the Santares is acknowledged by a notary public on September 5, 1967. The Aeschlimans' signatures on the option to purchase were not acknowledged before a notary public. The option to purchase is dated "on the ——— day

of September, 1967," the day not being filled in. The option, which was coupled with the lease, provided for a purchase price of $68,000 (the same figure that Santare had offered in his third offer to purchase, dated August 21, 1967). Santare moved into the home on September 29, 1967, and exercised the option to purchase on September 19, 1968. On October 17, 1968, the deed was recorded, conveying the property at a purchase price of $68,000.

The trial judge in a written decision, prior to the entry of judgment, stated that: "The obligation of the real estate broker, however, had been completed when he produced the purchaser, and the lease with option to purchase which was ultimately entered into by the parties was merely the means of carrying into effect the relationship which had been initiated by plaintiff when he produced the purchaser and presented him to the property owner."

■ However, the contractual obligation of the broker was more than just producing the ultimate purchaser and presenting him to the property owner. The option to purchase by its terms gave the buyer the option to purchase the property for the sum of $68,000, between October 1, 1968, and November 1, 1968, and for the sum of $69,000 if the option was exercised between September 1, 1969, and November 1, 1969. A condition to exercising the option was that the buyer would have been a lessee for a year prior to the date of exercising the option. The lessee, of course, did not have to exercise the option and purchase the property. The home listing agreement was drawn by the broker and, therefore, it is to be construed strictly as to the broker's rights. That agreement gave the broker the exclusive right and privilege to "sell" the property for 90 days, and further provided as hereinbefore set forth for certain conditions pertaining to a "sale" during the six-month period following the expiration of the exclusive period. The seller has contended that the option-to-purchase contract entered into did not constitute a "sale" under the listing agreement. In *Hatfield v. State*, 9 Ind.App. 296, 36 N.E. 664, it is stated: "A sale, strictly speaking, imports a transfer of the title and possession of property in consideration of a price paid or to be paid in money."

■ In any event, the broker did not produce a buyer who was ready, willing and able to purchase the property within the 90-day exclusive period or the six months' period following the exclusive period. As the broker drew the contract, he could have provided for the contingency that occurred in this case, but he did not do so. Although no questions are raised as to the purchasers' ability to purchase the property, the facts herein do not substantiate the broker's position that the purchaser was ready and willing to purchase the property within the terms of the con-

tract. Good faith on the part of the seller did not require acceptance of any of the three offers made by Santare in July and August of 1967. The only similarity between Santare's last offer and the option to purchase in the lease is the option price of $68,000, as the terms and conditions of each were different. It is to be observed that the option price of $68,000 could only be exerised after the payment of $6,000 in rent, and the buyer testified he was not certain he was going to buy the property.

Because we have determined that the broker is not entitled to a real estate commission, it is unnecessary to discuss the contentions of the seller that the broker abandoned his contract before the expiration of the exclusive listing agreement; that he acted adversely to the seller when he filed a lien for cleaning bills against the property on August 25, 1967; and breached the Real Estate Board Code of Ethics because he allegedly solicited a listing of the prospective buyer's property when negotiations with the seller were still pending. Regardless of these contentions, the testimony is that the broker had no further dealings with the ultimate purchaser after he returned the earnest money to the purchaser on August 29, 1967, which date is prior to the expiration of the 90-day exclusive period.

However, the testimony and exhibits in this case support the broker's claim of recovery of the $379 expended by him for work which he undertook to have performed in cleaning and painting with the seller's approval or in order to make the home more presentable for sale. The trial court properly found that the seller is liable for the cost of this work, but the court improperly found that the broker was entitled to a commission.

For the above reasons, the judgment in favor of the plaintiff for the real estate commission is reversed, and the judgment in favor of the plaintiff for $379 for cleaning and painting is affirmed.

Reversed in part and affirmed in part.

SEIDENFELD, J., concurs.

Mr. JUSTICE GUILD, dissenting:

I must respectfully dissent from the majority in this case.

Basically the facts are quite simple. The owner listed his property with the real estate broker; the broker produced a buyer who offered $68,000 for the property on August 21, 1967; the owner refused to sell and in September of 1967, Dr. Santare, the purchaser produced by the real estate broker, moved into the house under a lease for a year with an option to purchase the property for exactly the price offered by him through the broker. This amount would be very close to the interest on

$68,000, and including the taxes, it in effect deferred the payment of the purchase price for one year when Dr. Santare exercised the option at $68,000. In my opinion this is but a subterfuge to avoid paying the broker a commission, for the buyer he produced at the figure he subsequently paid. I would affirm the trial judge.